(137 App. Div. 316.)

GRAY v. CITY OF NEW YORK.

(Supreme Court, Appellate Division, First Department. March 24, 1910.)

1. WITNESSES (§ 209*)—COMPETENCY—PRIVILEGED COMMUNICATIONS TO PHYSICIANS.

In an action for wrongful death, the testimony of a physician as to statements made by decedent as to how the accident occurred is admissible notwithstanding Code Civ. Proc. §§ 834, 836, prohibiting a physician from disclosing professional information, etc., where his capacity in attending decedent is not shown, except that he responded to a call from some one in authority at a hospital for an ambulance.

[Ed. Note.—For other cases, see Witnesses, Cent. Dig. § 771; Dec. Dig. § 209.*]

2. MUNICIPAL CORPORATIONS (§ 819*)—DEFECTIVE STREETS—NUISANCE—EVIDENCE.

In an action for the death of a pedestrian alleged to have been caused by a nuisance maintained by the city, evidence held insufficient to show that the nuisance, if any, caused the accident.

[Ed. Note.—For other cases, see Municipal Corporations, Dec. Dig. § 819.*]

Appeal from Trial Term, New York County.

Action by John Gray, as administrator of Mary Gray, deceased, against the City of New York. From a judgment for plaintiff and

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

from an order denying a new trial, defendant appeals. Reversed, and new trial ordered.

See, also, 122 N. Y. Supp. 1130.

Argued before INGRAHAM, P. J., and LAUGHLIN, CLARKE, SCOTT, and MILLER, JJ.

Archibald R. Watson, Corp. Counsel (Theodore Connoly, of counsel, and Loyal Leale, on the brief), for appellant.

James C. Cropsey, for respondent.

CLARKE, J. No. 258 West Houston street was owned by the city, having been purchased in condemnation proceedings for a school site. The complaint alleged that on May 26, 1907, Mary Gray was lawfully passing along the sidewalk in front of the premises, and while so doing her foot and leg were caused to go into an opening of a partly uncovered coal hole, and thereby said deceased received severe injuries, which thereafter, on the 2d day of June, 1907, caused her death. The complaint alleges negligence, and also "and in causing, permitting or allowing said hole or opening in the said sidewalk to be and remain a nuisance." At the close of the testimony, counsel for the city asked that the plaintiff be instructed to elect whether or not he is suing for a nuisance or a negligence, whereupon counsel for the plaintiff stated:

"I will elect on the ground that it is a nuisance."

The court charged:

"The incident which the plaintiff claims herein was a wrongful act on the part of the city is that there was an open coal hole in the sidewalk of the property owned, not by a private person, but by the city itself, and the law upon which the plaintiff relies now is that the public are entitled to unobstructed passage upon the streets, including the sidewalks, of the city, and that in such case it is not necessary to prove negligence. The persons walking on a public street, exercising the ordinary care of persons in walking, have a justifiable expectation that the streets there are as safe as otherwise."

It appeared that on election night in November, 1906, this building, being unoccupied, was wrecked by boys to a considerable extent, and, among other things, the coal hole cover was stolen. The city's proof was that a flagstone was placed over the coal hole; but the main defense is that the woman did not fall into the hole at all. It is conceded that she fell in the street, that she broke her leg, that septicæmia developed, and that she died.

The only witness claiming to have seen the accident was Mary E. Daggett, who testified that on the 26th of May, 1907, she resided at No. 254 West Houston street and had lived there about three years. She testified:

"I saw an accident on the sidewalk of West Houston street on Sunday morning, the 26th of May, 1907, around 8 o'clock. * * * I saw a woman go down in the hole in front of her. I never saw the woman in my life before. I was behind her at that time. * * * I saw her go down in the hole, and I went to help lift her out. The hole was in the sidewalk, a coal hole. * * * There was no cover over the hole of any kind, nothing at all. * * * After I saw the woman go in the hole I lifted her out. There was a gentleman had a room off me, and he was right behind me, and I could not lift her alone, and I gave her assistance, and I took her as far as the corner of Varick street into the baker's, and I left her."

Cross-examination:·

"I do not know who the woman was who fell in that hole that I saw. I don't know to this day who that woman was. * * * Somebody was with me or close to me when I saw this accident, right behind me, a man by the name of Tom McCarty who had a furnished room off of me. I did make a statement, but there was a man behind me. I couldn't lift her out of the hole alone. I made a statement that nobody was around to that gentleman, there (Mr. Sullivan). I did swear to that statement that there was nobody around me at all. * * * When I helped her out of the hole, I took her to the corner of Varick and Houston and left her. Varick is one block west of Houston street. * * * McCarty was with me at that time. It was after she got out of the hole that he helped me. She limped very lame. She went as far as Varick street, that is, only half a block, with the assistance of myself and some one else. * * * I left her at the corner of Varick and Houston, at the bakery shop. I didn't know where she went after I left her, I didn't ask her. I left her there. * * * I left her sitting right at the corner, nobody but herself. I went about my business, and I don't know where McCarty went. * *· * I left her standing at the corner, and that is all I know. I don't know how far she had walked from where she was hurt. It was in the middle of the block where she went into the coal hole. I was not at all interested in a stranger. She was a very heavy woman. I left McCarty there. He didn't go with me. He helped me lift her out of the hole. I don't know where she did go. I did not ask the woman at any time where she lived or where she was going or where she wanted to go. I said, 'Where are you going?' And she said, 'I am going to the corner.' I said, 'All right, I will help you.' And I said, 'Are you all right now?' And she said, 'Yes.' When I last saw her she was standing and nobody with her."

William Lynch testified that he knew Mrs. Gray, and in May lived at the same number she did, 559 Greenwich.

"I saw Mrs. Gray on Sunday morning, May 26, 1907. She said she was going to the baker's, Varick and Houston streets. * * * I saw her again in about three-quarters of an hour. Then she was up at Hudson and Houston streets. She couldn't go any further. She was injured. She sent a little boy with me, and then I went out with this gentleman up here. I found that the woman was hurt. I carried her home until we got down in front of the door, and then we put her in a chair and carried her up on the second floor, and the bone of the left leg was shot out about that long."

Cross-examination:

"I saw this woman on Hudson street when she was injured. I am pretty sure it was not on Varick street; I am positive, yes. When I saw her, Mr. Seitter was there. Mr. Seitter and myself assisted her to her residence. Hudson street was torn up at the time, and so was Houston street. * * * Where I have made an X right near the curb on Hudson and Houston is where I saw her, in front of the butcher's shop. She was seated at the time I saw her. She couldn't go any further. * * * Right near that door there, she was sitting down on the sidewalk, right up against the edge of that window. There were 8 or 10 people there. * * * Hudson street at the time was torn up on the west side. That was the side of the street which I found Mrs. Gray on. At the time that I found her she was distant about a block and a half. She was seated about 10 feet from the opening. * * * I saw her with the bone protruding from the left leg. * * * Varick street * * * is·one block to the east of Hudson. She couldn't walk. She couldn't get up. We had to lift her up."

Dr. O'Mara, for the plaintiff, testified that he saw her on Sunday morning, the 26th of May.

"I found a compound fracture of both bones of the leg, the left leg. I believe it was one of the bones in communication with the outside world. I treated her, I think it was, for two days until she went to the hospital."

### Cross-examination:

"I did examine the nature of the fracture. * * * The bone was protruding; that is, the tibia. * * * I don't think she could walk any distance with that. She could not walk half a block with it. I cannot say what a person's capability of suffering pain is, but my impression is that she could not walk at all. I did ask this woman what happened to her when she met with the injury. I wanted to know how she got hurt. She said that she fell on the street; I think she said Hudson street. * * * My recollection is she told me when I examined her on Sunday morning that she had fallen on Hudson street. * * * "

### Redirect examination:

"Q. May she have said Houston street? A. Well, she might have; I won't swear to it, but my best recollection is that she said Hudson street."

### John Gray, the plaintiff, testified:

"I found Mrs. Daggett, the lady that was on the stand this morning. I never knew the woman before."

For the defense a civil engineer testified that the length of the block between Hudson and Varick streets on the north side is 401 feet. The distance from No. 258 Houston to the corner of Hudson street is 149 feet 6 inches, and to the corner of Varick street is 251 feet 6 inches. The width of Hudson street is 89 feet.

William Ryan, a policeman, testified he called at the house of Mrs. Gray on the 28th of May with Officer Dwyer.

"She told me that while she was crossing Hudson street and Houston she stepped on a round stone and fell to the sidewalk. She said she was crossing Hudson street and Houston. When she made that statement, Officer Dwyer, and I think it was her daughter, were present. The young woman who is in court with the black hat I think is her daughter. She was present when her mother stated that she had fallen crossing Hudson street. Hudson street was torn up at that time. * * * At the time I wrote down what she told me as to how the accident happened in a book. I have got the book. (Witness produced the book.) Q. Is this a memorandum made at the time? A. At the time. I did make a report at the station house that day."

The plaintiff did not offer this memorandum from the book or examine about it.

Dwyer testified that he was present at this conversation. This was when the ambulance was called to take Mrs. Gray to the hospital from her house upon the advice of the doctor.

"The officer asked the lady her pedigree, her name, and so forth, and also inquired how she received the accident, and she stated that Sunday morning she stepped on a stone at Hudson and Houston streets and turned on her ankle. There was a young lady present in the apartment. I think that is the young woman who is in court."

### Gustave Seitter testified:

"I remember in assisting to carry Mrs. Gray home on the day she met with the accident. I found her at the corner of Houston and Hudson. I was there when the witness Lynch came there. She was sitting right in the doorway of the butcher shop. * * * She did not say anything as to what caused her to fall. * * * She could not walk at that time. The witness Lynch and myself assisted her to her home."

Winifred Dwyer, her daughter, testified that after she had heard of her mother's injury she called at the house.

"I said, 'What happened to you?' She said, 'I fell.' Q. Did she tell you where? A. No, she didn't tell me where. Q. Haven't you at some time or other stated where? A. No, sir; a man came to my house about a couple of weeks ago. A man came to my house on the 5th of August, 1907. Q. And then didn't you state that your mother said that she fell on Hudson street? A. Yes, sir. By Mr. Cropsey: Did you so state? A. No, sir. By Mr. Collins: Q. But you said that she so stated, didn't you? A. Yes, sir."

Dr. Wadhams, the ambulance surgeon, testified:

"I did have a talk with the deceased as to how the accident occurred. Q. Were there other persons present at the time when you asked her? A. There were. Q. Who? A. I think there were two police officers and the patient's daughter. Q. Did the patient in their presence tell you what caused her injuries? (That was objected to under sections 834 and 836 of the Code, and sustained.) Q. Did she tell you that she tripped on a cobble stone at Hudson street and Houston street? (Excluded.) Q. Did she state to you in the presence of those persons what caused the accident? (Excluded.) Q. Were you her attending physician? (Excluded.) Q. In what capacity were you called in to attend, if at all, on this woman? (Excluded.) Q. At whose request did you call at this house? A. At the request of some one in authority at the hospital, but I could not say. Q. Was it in response to a call for an ambulance? A. It was. I don't think it possible for this woman to walk, in my opinion, in the condition in which I had found her. She had her leg all in splints and everything of that kind when I saw her. Even taking the splints off it was not possible for her to walk. I know the nature and extent of that woman's fracture."

The evidence of this witness of decedent's statements of where and how the accident occurred was competent, and it was error to exclude it. Griffiths v. Met. St. Ry. Co., 171 N. Y. 106, 63 N. E. 808; Green v. Met. St. Ry. Co., 171 N. Y. 201, 63 N. E. 958, 89 Am. St. Rep. 807; Benjamin v. Village of Tupper Lake, 110 App. Div. 426, 97 N. Y. Supp. 512; Travis v. Haan, 119 App. Div. 139, 103 N. Y. Supp. 973.

The court charged:

"Before making a remark about the evidence, the court reminds you that there is no evidence in this case that there was any negligent condition of the highway existing at Hudson and Houston streets on the day of the accident, and that you are not at liberty to conclude in this case that there was any such defective condition at Hudson and Houston streets for which the defendant may be held liable in this case, and, if you believe that the accident happened at Hudson and Houston streets, the verdict must be for the defendant."

So that the case was submitted solely upon the doctrine of nuisance for the maintenance by the city of an unprotected coal hole in the sidewalk in front of its own property, No. 258 West Houston street. I eliminate from consideration a large amount of evidence tending to show that this coal hole was covered with a flagstone, also that the evidence is extremely unsatisfactory and almost negligible that the flagstone was off at the time, or at any time reasonably proximate to the date of the injury. Looking solely for proof of the locus in quo of the accident, assuming the coal hole to have been unprotected, the only evidence is that of Mrs. Daggett, who testified that she saw a woman whom she had never seen before, whose name she did not know, and whom she does not now know, go down in the hole on the morning of May 26th, that she and McCarty pulled her out, that she helped her to walk to the bakery shop on the corner of Varick street, and that there she left her; the woman then saying that she was all right. McCarty is not produced.

On the other hand, the decedent had a compound fracture of both bones of her leg, which, according to the medical testimony, prevented her from walking. She is found sitting in front of a butcher shop at the corner of Hudson and Houston streets with her bone protruding. It was impossible for her in her condition to have walked that far from the alleged scene of the accident. From Hudson and Houston she was carried by Lynch and Seitter to her home. She said to various witnesses that she had fallen in Hudson street. Her attending physician and two policemen who saw her two days after the accident so testified. Her daughter had said that she had fallen in Hudson street. It is clear that the woman that Mrs. Daggett says she saw fall in the coal hole is not identified as the decedent. The plaintiff has not sustained the cause of action set up in the complaint and submitted to the jury. The verdict was against the weight of evidence.

The judgment and order appealed from should be reversed, and a new trial ordered, with costs to the appellant to abide the event. All concur.